UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| CHRISTOPHER JAMES HARRIS, | ) |  |
|---|---|---|
| Plaintiff, | ) ) ) |  |
| v. | ) ) | Case No. CIV-17-1318-G |
| A. RUSSELL et al., | ) ) ) |  |
| Defendants. | ) |  |

## **ORDER**

Plaintiff Christopher James Harris, a federal prisoner appearing pro se and proceeding *in forma pauperis*, brings this *Bivens*[1] action against seven defendants, alleging violations of the Eighth Amendment of the United States Constitution. For the reasons set forth below, the Court determines that Plaintiff's claims should be dismissed. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b)(1); 42 U.S.C. § 1997e(c)(1).

STANDARD OF REVIEW

The Court is obligated to conduct an initial review of Plaintiff's Complaint to identify its cognizable claims and to dismiss the pleading, or any portion thereof, that is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§

---

[1] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) (holding that a "federal agent acting under color of his authority" may be liable for money damages when he violates certain constitutional rights even though there is no federal statute expressly authorizing an award of damages).

1915(e)(2)(B), 1915A(b); 42 U.S.C. § 1997e(c)(1); Doc. No. 5 (Order granting Plaintiff leave to proceed *in forma pauperis*).

A complaint fails to state a claim upon which relief may be granted when it lacks factual allegations sufficient "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (footnote and citation omitted). In evaluating whether a plaintiff has stated a valid claim, the Court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013). Bare legal conclusions in a complaint are not entitled to the assumption of truth; "they must be supported by factual allegations" to state a claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

A pro se litigant's complaint must be liberally construed. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The broad construction accorded to the pro se litigant's allegations does not, however, "relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

## PLAINTIFF'S CLAIMS AND RELIEF SOUGHT

Plaintiff filed a Complaint on December 7, 2017, and a Supplement to that Complaint on March 19, 2018. *See* Compl. (Doc. No. 1); Pl.'s Suppl. (Doc. No. 12). Plaintiff's claims arise from events that transpired: (1) beginning in August 2014, while Plaintiff was housed at Federal Correctional Institution El Reno ("FCI El Reno"), located

in El Reno, Oklahoma; and (2) beginning February 2016, while Plaintiff was housed at Federal Correctional Institution Jesup ("FCI Jesup"), located in Jesup, Georgia.[2] *See* Compl. at 9-16; Pl.'s Suppl. at 1-3.[3]

Plaintiff brings claims of inadequate medical treatment against the following defendants associated with FCI El Reno: A. Russell, Spencer Zeavin, MD, and K. Demers (collectively, the "FCI El Reno Defendants"), and against the following defendants associated with FCI Jesup: M. Branch, Loveless, Shannon Ellis, MD, and Aremu Bolaji (collectively, the "FCI Jesup Defendants"). *See* Compl. at 1, 4, 6-16. Plaintiff is suing Defendants Zeavin and Ellis in their official capacities only, Defendant Loveless in her individual capacity only, and Defendants Russell, Demers, Branch, and Bolaji in both their official and individual capacities. *Id.* at 4, 14. Plaintiff seeks monetary damages and the provision of health care insurance. *Id.* at 7-8, 12.

Plaintiff alleges that in August 2014, shortly after arriving at FCI El Reno, he began getting painful boils on his face. *Id.* at 9. Plaintiff believes the boils were the result of drinking impure water from a FCI El Reno water fountain. *Id.* According to Plaintiff, the medical staff at FCI El Reno took two skin cultures, the first identifying Acinoetobacter calcoaceticus-baumanii and the second identifying Klebsiella pneumoniae. *Id.* at 9-10;

---

[2] Plaintiff also describes events that occurred while he was housed at Federal Correctional Institution Williamsburg ("FCI Williamsburg"), located in Williamsburg, South Carolina, and includes several documents relevant only to his time at this facility. *See* Compl. at 10; Pl.'s Suppl. Ex. 2 (Doc. No. 12-2) at 1-12, 16-30. However, Plaintiff does not name any defendants affiliated with FCI Williamsburg.

[3] References herein to documents filed in this Court use the CM/ECF pagination.

Compl. Ex. 1 (Doc. No. 1-1) at 13-14. Plaintiff contends that, despite the culture results, Defendant Russell "tr[ied] to push [Plaintiff's symptoms] off as being Acne." Compl. at 10. When Plaintiff arrived at FCI Jesup in February 2016, certain Jesup Defendants canceled a dermatologist appointment previously scheduled by FCI El Reno and had him see, instead, the "[Bureau of Prisons'] telederm[atologist]." *Id.* Plaintiff alleges that failure to accurately diagnose and sufficiently treat his symptoms has resulted in permanent skin damage, pain and suffering, and possible liver damage. *Id.* at 12.

## ANALYSIS

Prison officials violate a prisoner's Eighth Amendment rights "when they are deliberately indifferent to the serious medical needs of the prisoners in their custody." *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001) (citing *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999)). To state such a claim, a plaintiff must allege both an objective and a subjective component. *Id.* To satisfy the objective component, a plaintiff must allege facts that plausibly show that the alleged deprivation of care was "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). To satisfy the subjective component, a plaintiff must allege facts that plausibly show that the defendant was aware of and ignored "an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837; *Sealock*, 218 F.3d at 1209.

The Court assumes that the objective component of an Eighth Amendment violation would be met by Plaintiff's alleged facts. However, Plaintiff's allegations, even when

accepted as true and liberally construed in his favor, do not support the subjective component of such a claim.

When a plaintiff alleges that he or she was seen by a medical professional but that person denied or delayed proper medical care, the plaintiff—in order to satisfy the subjective component of an Eighth Amendment claim—must present facts showing more than mere disagreement with the medical professional's judgment or even that such judgment was negligent. The deliberate indifference standard "is not satisfied, absent an extraordinary degree of neglect, where a doctor merely exercises his considered medical judgment." *Self v. Crum*, 439 F.3d 1227, 1232 (10th Cir. 2006). Thus, a prisoner's "disagree[ment] with a diagnosis or a prescribed course of treatment" is insufficient to support an Eighth Amendment violation. *Id.*; *see Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992). And the mere "negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation." *Perkins*, 165 F.3d at 811.

As outlined below, the Court has applied these principles to each of the seven Defendants named by Plaintiff. While Plaintiff criticizes the medical treatment provided him, he has not alleged facts that plausibly show that any Defendant "acted or failed to act despite [that person's] knowledge of a substantial risk of serious harm" to Plaintiff's health or safety. *Farmer*, 511 U.S. at 837, 842; *see also Levy v. Kafka*, 6 F. App'x 822, 823 (10th Cir. 2001). On the contrary, the allegations reflect that numerous officials "have recognized [Plaintiff's] serious medical condition and are treating it" with care that includes consultations with doctors, diagnostic tests, and prescription-strength

medications. *Perkins*, 165 F.3d at 811; *see also Levy*, 6 F. App'x at 823. And to the extent that Plaintiff suggests that he should have been referred to specialists or medical providers other than the ones who treated him, he has likewise failed to present facts that satisfy the subjective component of a deliberate indifference claim. "Matters that traditionally fall within the scope of medical judgment are such decisions as whether to consult a specialist or undertake additional medical testing." *Self*, 439 F.3d at 1232. The facts alleged by Plaintiff do not indicate that the medical professionals who treated him ignored an obvious "need for additional treatment or referral to a medical specialist" but that such professionals provided care in accordance with their medical judgment, albeit incorrect or negligent judgment. *See id.* "[W]here a doctor orders treatment consistent with the symptoms presented and then continues to monitor the patient's condition, an inference of deliberate indifference is unwarranted under our case law." *Id*. at 1232-33.

With respect to the FCI El Reno Defendants, Plaintiff's allegations show that Plaintiff has been provided care for his skin condition and fail to establish that any Defendant was deliberately indifferent to Plaintiff's serious medical needs.[4] Plaintiff's

---

[4] The undersigned additionally notes that most, if not all, of Plaintiff's allegations against the FCI El Reno Defendants appear to be barred by the statute of limitations. *See Indus. Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 968 (10th Cir. 1994) ("[A] *Bivens* action, like an action brought pursuant to 42 U.S.C. § 1983, is subject to the statute of limitations of the general personal injury statute in the state where the action arose."); *McCarty v. Gilchrist*, 646 F.3d 1281, 1289 (10th Cir. 2011) (explaining that the personal injury statute of limitations in Oklahoma is two years). Plaintiff alleged that he arrived at FCI El Reno on June 30, 2014, and was transferred out of FCI El Reno on February 8, 2016, yet he did not file his Complaint until December 7, 2017. Compl. at 1, 9. Plaintiff had "reason to know of the existence and cause of the injury" underlying his claims against Defendant Russell, for instance, on April 14, 2015, the date on which she sent the email regarding the results of Plaintiff's second culture. *Alexander v. Oklahoma*, 382 F.3d 1206,

6

only allegation against Defendant Demers, a certified physician assistant, is that she diagnosed Plaintiff "without even laying an eye on [him]." Compl. at 15. Similarly, Plaintiff's sole allegation against Defendant Zeavin is that he "signed off on various drugs" and failed to "tak[e] control of the situation." *Id.* These sparse assertions do not plausibly show the "extraordinary degree of neglect" required to establish deliberate indifference. *Self*, 439 F.3d at 1232. Rather, they illustrate that Plaintiff's condition was reviewed and that these Defendants exercised their medical judgment to diagnose and treat Plaintiff's condition. *See id.*; *see also* Compl. Ex. 1 at 13 (communication from Defendant Demers to Plaintiff regarding his medications, culture results, and future provider visit), 14 (Defendant Zeavin's description of Plaintiff's culture results).

Plaintiff alleges that Defendant Russell, a certified physician assistant, "blocked [Plaintiff] from seeing the doctor" and "tr[ied] to push [Plaintiff's symptoms] off as being acne" despite the results of Plaintiff's second culture, which indicated the presence of Klebsiella pneumoniae. Compl. at 10, 15. But Plaintiff's factual allegations and the documents Plaintiff attached to his Complaint reflect that Plaintiff's condition was reviewed by at least two doctors while he was housed at FCI El Reno—Defendant Zeavin and a dermatologist (seen remotely via "T.V. screen")—and that FCI El Reno had scheduled an additional appointment with an outside dermatologist prior to Plaintiff's

---

1215 (10th Cir. 2004); Compl. Ex. 2 (Doc. No. 1-2) at 2. Similarly, Defendant Demers' communication to Plaintiff and Defendant Zeavin's report regarding Plaintiff's second culture, *see supra* p. 7, are dated December 22, 2014, and March 30, 2015, respectively. Compl. Ex. 1, at 13-14; *see also* Pl.'s Suppl. at 1 (describing change of medication upon Plaintiff's initial arrival at FCI El Reno). These claims, therefore, are untimely.

transfer. *See* Compl. at 9-10; Compl. Ex. 1, at 13, 14; Compl. Ex. 2, at 2. While Plaintiff may be dissatisfied with Defendant Russell's alleged refusal to consult additional specialists, such a decision falls within her "scope of medical judgment" and does not illustrate medical neglect. *Self*, 439 F.3d at 1232; *see Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968) ("The prisoner's right is to medical care—not to the type or scope of medical care which he personally desires.").

Moreover, Plaintiff's criticism of Defendant Russell's interpretation of the skin culture results amounts to no more than a "disagree[ment] with a diagnosis," which is insufficient to establish deliberate indifference. *Perkins*, 165 F.3d at 811; *Coppinger*, 398 F.2d at 394 ("A difference of opinion between a physician and a patient does not give rise to a constitutional right."). Plaintiff states that he "[has] a message from Mrs. Russell telling [him] that the culture came back different but she still as she'd always had tr[ied] to push it off as being acne." Compl. at 10. Plaintiff includes this message—an email from Defendant Russell dated April 14, 2015—in the documents filed with his Complaint. Compl. Ex. 2. Contrary to Plaintiff's description, Defendant Russell's statement in that email message indicates only that the culture showed bacteria that was susceptible to the medication that Plaintiff was already taking and that bacteria consistent with acne was additionally present. *See* Compl. Ex. 2, at 2 ("Your culture showed a different bacteria than the original culture[;] however, it is still susceptible to Cipro. Bacteria also consistent with acne were cultured. We are still awaiting to hear from the dermatologist."). Accordingly, the inference suggested by Plaintiff—that Defendant Russell deliberately and

8

indifferently ignored a medical diagnosis and prevented Plaintiff from receiving the provider care he required—is not plausibly supported by Plaintiff's pleading.

With respect to the FCI Jesup Defendants, Plaintiff's allegations are similarly lacking.[5] Plaintiff alleges that, upon his arrival at FCI Jesup in February 2016, Defendants Branch, Loveless, and Bolaji "made [Plaintiff] start all over again on the same medication" that had been ineffective at FCI El Reno. Compl. at 9-10. He further alleges that Defendant Loveless "brushed [Plaintiff] off countless times," that Defendant Ellis "signed off on a lot of drugs prescribed by [Defendant] Bolaji without even seeing [Plaintiff]," and that Defendants Branch and Bolaji prevented [Plaintiff] from seeing an "outside dermatologist." *Id.* at 16.

Plaintiff's assertion that the FCI Jesup Defendants—most notably Defendants Branch and Loveless—ignored Plaintiff's medical needs is contradicted by his assertion that they prescribed him medication, *see* Compl. at 9, 16, and that Plaintiff received at least one skin culture test while housed at FCI Jesup, *see* Compl. Ex. 1 at 15. Plaintiff's factual allegations do not plausibly indicate that he was denied medication, diagnostic tests, or the medical attention of a doctor—but only that Plaintiff disagreed with the treatment provided. This is not sufficient to satisfy the subjective component of a deliberate indifference claim.

---

[5] Though the Court finds that dismissal of Plaintiff's claims against the FCI Jesup Defendants is warranted under 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1) and 42 U.S.C. § 1997e(c)(1), the Court also notes that Plaintiff has alleged no facts suggesting that this Court has personal jurisdiction over these Defendants. *See Trujillo v. Williams*, 465 F.3d 1210, 1216-17 (10th Cir. 2006) (holding that a district court may *sua sponte* consider personal jurisdiction and venue under 28 U.S.C. § 1915 "'when the defense is obvious from the face of the complaint and no further factual record is required to be developed'").

*See Self*, 439 F.3d at 1232; *Ledoux*, 961 F.2d at 1537 (explaining that decisions such as the types of medications prescribed and referrals to specialists are generally matters of medical judgment).

Finally, while Plaintiff criticizes Defendants Branch and Bolanji for canceling an appointment with an "outside dermatologist," he acknowledges that he instead was referred for another remote examination by the dermatologist he had seen previously. *Id.* at 10. The FCI Jesup Defendants' decision to consult a specialist within the Bureau of Prisons rather than outside that agency fell within their scope of medical judgement and cannot reasonably sustain a claim under the Eighth Amendment. *See Self*, 439 F.3d at 1232; *Coppinger*, 398 F.2d at 394; *Ledoux*, 961 F.2d 1537.

Upon careful review of Plaintiff's Complaint, Supplement, and the documents and pictures attached to those filings, the Court concludes that the facts alleged by Plaintiff reflect that prison officials at both FCI El Reno and FCI Jesup recognized Plaintiff's serious medical condition and were diligently attempting to diagnose and treat it. While housed at FCI El Reno, Plaintiff was seen by at least two doctors (including a dermatologist), had two cultures taken, and was prescribed medication consistent with the results. *See* Compl. at 9-10; Compl. Ex. 1, at 13, 14; Compl. Ex. 2, at 2. While housed at FCI Jesup, Plaintiff had at least one culture taken, was seen by a dermatologist, and was again prescribed medications consistent with his symptoms. *See* Compl. at 9-10, 16; Compl. Ex. 1, at 15. Plaintiff's allegations illustrate nothing more than a disagreement with medical staff regarding the diagnosis and course of his treatment and do not, therefore, support a claim for an Eighth Amendment violation. *See Jackson v. Clowers*, 83 Fed. App'x 990, 993

(10th Cir. 2003) ("[P]enitentiary medical staff swiftly responded with good-faith efforts to treat [the plaintiff's] ailments. Even if the allegedly inadequate treatments caused [the plaintiff's] skin condition to recur persistently, these facts would, at best, support a medical malpractice claim. Such a claim cannot be brought as a *Bivens* action.").

## CONCLUSION

Accordingly, Plaintiff's pleading (Doc. Nos. 1, 12) is DISMISSED, without prejudice to refiling, for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); 42 U.S.C. § 1997e(c)(1).

IT IS SO ORDERED this 30th day of October, 2018.

*[signature]*
CHARLES B. GOODWIN
United States District Judge